**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| PETER DONATTI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 11-4166-CV-C-MJW |
| | ) | |
| CHARTER COMMUNICATIONS, L.L.C., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court are cross-motions for partial summary judgment filed by plaintiffs Peter Donatti and Matthew Cowan, and defendants Charter Communications, L.L.C., and Charter Communications, Inc. (collectively "Charter").[1]  The motions argue Charter's Post-May 2010 Compensation Policies as they relate to the Portal-to-Portal Act, as amended by the Employee Flexibility Commuting Act (EFCA) of 1996.  29 U.S.C. § 254.

Plaintiffs are or were previously employed as Broadband Technicians with Charter. Plaintiffs assert they are entitled to be paid for the time they spent driving to and from work in company-provided vehicles and performing activities they are required to complete before or after commuting.  Charter asserts plaintiffs are not entitled to compensation for such time and that their policies do not violate the Federal Labor Standards Act (FLSA), Portal-to-Portal Act, or the Employee Commuter Flexibility Act.

### Standard

Rule 56(c) of the Federal Rules of Civil Procedure requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine

---

[1]The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(c)..

dispute on a material fact." <u>City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op.</u>, 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. <u>Celotex</u>, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." <u>Hass v. Weiner</u>, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. <u>Robinson v. Monaghan</u>, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

## Facts

Plaintiff Matthew Cowan is a current Charter employee, and plaintiff Peter Donatti is a former Charter employee. Plaintiffs were employed by Charter during the relevant periods as Broadband Technicians ("technicians"). Charter allows, but does not require, technicians to commute to and from work in their assigned company vehicles. The decision to use a Charter vehicle to commute is voluntary. Instead of commuting in a company-provided vehicle, employees may choose to commute in their personal vehicles and park their assigned company vehicles at a Charter facility. Mr. Donatti elected to commute in a Charter vehicle, but Mr. Cowan did not. Mr. Cowan left his Charter vehicle at Charter's Sedalia office each night. However, there is an exception when technicians, like Mr. Cowan, are "on-call." During the time that a Charter technician is "on call," policy states that an employee may be required to take their company vehicle home.

Mr. Donatti held the positions of Broadband Technician II and Broadband Technician III during the relevant period of June 27, 2009, through June 27, 2011 (the "Class Period"), and Mr.

2

Cowan held the position of Broadband Technician IV (also known as Broadband Technician Senior, or "Tech Senior").

During the relevant periods, Charter has had written timekeeping and vehicle-use policies in place, named Vehicle Policies, Timekeeping Policies, Timekeeping Memoranda, and an Employee Handbook, that specify when technicians such as plaintiffs begin and end their workday, and how they should record their work time for payroll purposes. (Doc. 57, Affidavit of Colleen Judson, ("Judson Aff."), ¶¶ 24-28; see generally, Doc. 58, Ex. 9, 2008 Timekeeping Policy; Ex. 10, July 2009 Timekeeping Policy; Ex. 11, October 2009 Timekeeping Policy; Ex. 12, 2010 Timekeeping Policy[2]; Ex. 5, 2011 Timekeeping Memo.) These written policies specify that technicians are not paid for their normal commuting time, i.e., the time they spend driving from their home to work in the morning, and from work back home in the evening, regardless of whether the technicians choose to commute in their private vehicles or in Charter-provided vehicles. See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 1-4; Doc. 57, Judson Aff. ¶¶ 29-33; Doc. 58, Ex. 13, relevant excerpts from 2006 Handbook at 46; Ex. 14, relevant excerpts from March 2010 Handbook at 124; Ex. 15, relevant excerpts from December 2010 Handbook at 70; Ex. 16, relevant excerpts from 2011 Handbook[3] at 70.

The written policies further specify that technicians who commute in Charter-provided vehicles are not paid for performing certain activities that are related to their commute, such as carrying specified equipment and customer payments to and from their vehicles and conducting a limited safety check before beginning the drive to work. See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 1-4. The written policies specify that Charter will pay its nonexempt employees for all hours they work, and strictly prohibit employees from working "off the clock" – that is, before their shift begins, after their shift ends, or during a meal break – without advance authorization. See Doc. 58, Ex. 12, 2010 Timekeeping Policy at 1; Ex. 16, 2011 Employee Handbook at 15. Nevertheless, if an employee works off the clock, even without authorization, Charter's policies require that the employee be compensated for the time worked. Id. Technicians are required to comply with Charter's timekeeping and vehicle-use policies, as amended from time to time. See

_____

[2] Although subsequent citations refer only to the 2010 Timekeeping Policy, it is noted that previous Timekeeping Policies included similar language to that cited.

[3] Although subsequent citations refer only to the 2011 Handbook, it is noted that previous employee handbooks included similar language to that cited.

Doc. 57, Judson Aff., ¶¶ 4, 5. Plaintiffs acknowledged, in writing, that they had read and understood Charter's timekeeping and vehicle-use policies. (Doc. 57, Judson Aff. ¶¶ 6, 12-17; see Doc. 58, Ex. 17, Donatti Acknowledgment of 2008 Timekeeping Memo; Ex. 18, Donatti Acknowledgment of 2009 Timekeeping Memo; Ex. 19, Donatti Acknowledgment of 2010 Timekeeping Memo; Ex. 20, Cowan Acknowledgment of 2008 Timekeeping Memo; Ex. 21, Cowan Acknowledgment of 2009 Timekeeping Memo; Ex. 22, Cowan Acknowledgment of 2010 Timekeeping Memo.)

Procedural History

Plaintiffs filed their complaint on June 27, 2011, and an amended complaint on August 15, 2011. In both complaints, plaintiffs assert FLSA claims on behalf of themselves and all similarly situated "Cable Technicians." Plaintiffs allege a class period of two years in their Amended Complaint. See Doc. 8, Amended Complaint, ¶¶ 28, 44. Because the original complaint was filed on June 27, 2011, the class period extends back two years from the date of filing: June 27, 2009, through June 27, 2011.

Plaintiffs allege Charter failed to compensate them and the other technicians for time spent transporting company property in Charter vehicles, and for time spent performing certain pre- and post-shift activities, such as gathering tools and paperwork, obtaining routes and orders, and inspecting vehicles. Plaintiffs contend that Charter's failure to pay for the time spent performing these activities violates the FLSA. On November 30, 2011, the parties submitted a Joint Proposed Preliminary Scheduling Order in which they agreed that there are two potentially dispositive legal issues that the Court should resolve at the outset. The first threshold issue is whether plaintiffs' commuting time claims are cognizable under the ECFA. On December 5, 2011, this Court entered the parties' Proposed Scheduling Order and set a schedule for discovery and dispositive motions on the threshold issues. [4]

Charter's Compensation and Timekeeping Policies for Non-Exempt Employees

Charter is the fourth largest cable operator in the United States, and provides advanced video, high-speed Internet, and telephone services to approximately 5.2 million residential and

_____

[4] The second issue pertaining to the effect of the settlement in Goodell v. Charter Communications, L.L.C., No. 08-512-bbc (W.D. Wis. 2010), was resolved by the Court's order of October 22, 2012.

4

business customers in 25 states.  *See* Doc 58, Ex. 16, 2011 Handbook at 4.  Charter requires its employees to accurately report all hours worked on their timecards.  See Doc. 58, Ex. 12, 2010 Timekeeping Policy at 3; Ex. 16, 2011 Handbook at 15-16.  An employee who provides false or inaccurate information on a timecard may be subject to discipline.  See Ex. 12, 2010 Timekeeping Policy at 2; Ex. 16, 2011 Handbook at 16.  Charter's general policies requiring compensation for nonexempt employees, including the rules described previously, are set forth in its Employee Handbook and Timekeeping Policy.  (Doc. 57, Judson Aff., ¶ 4.)

All employees are given access to the Employee Handbook and the Timekeeping Policy at the time they begin employment with Charter.  Id., ¶¶ 24, 29.  The Timekeeping Policy and the Employee Handbook are published online via Charter's intranet, and employees are notified of this when they begin employment with Charter through new-hire orientation.  Id.  Although the Timekeeping Policy is a free-standing policy, it is also incorporated into the Employee Handbook via a hyperlink whereby an employee reviewing the Employee Handbook online may click on a link to be directed to an electronic version of the Timekeeping Policy.  Id., ¶ 24. Charter revises its Employee Handbook and Timekeeping Policy periodically; updated versions are published to all employees online, and employees are made aware of this through announcements by Human Resources.  Id., ¶¶ 24, 29.

The Timekeeping Policies in effect during the Class Period were issued by Charter on August 7, 2008, July 20, 2009, October 5, 2009, and October 12, 2010.  Id., ¶ 24.  The Employee Handbooks in effect during the Class Period were issued in June 2006, March 2010, December 2010, and March 2011.  Id., ¶ 29.

Plaintiffs' General Job Duties

Technicians install, disconnect, and repair cable, Internet, and telephone services for Charter's residential and business customers at the customers' homes or businesses.  (Doc. 57, Judson Aff., ¶¶ 34-38; see Doc. 58, Ex. 23, Broadband Technician I Job Description at 1; Ex. 24, Broadband Technician II Job Description at 1; Ex.25, Broadband Technician III Job Description at 1; Ex. 26, Broadband Senior Job Description at 1; Ex. 27, Broadband Lead Job Description at 1.)  Technicians travel to customer locations that are within the boundaries of the cable systems to which they are assigned in Charter-provided vans or pickup trucks.  See, e.g., Job Description at 1-3; Doc. 52, Affidavit of Robert Burton ("Burton Aff."), ¶¶ 4-6.  The vehicles contain the

5

tools and equipment that technicians use to perform their duties at the customer locations.  (Doc. 52, Burton Aff., ¶ 4.)  While technicians must travel to customer residences in their assigned Charter vehicles, they are not required to commute to and from work in company vehicles. Instead, Charter permits technicians to drive their assigned vehicle from their home directly to the first customer location each day, and back home after finishing their work at the last customer location at the end of the day.  See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 1-3; Doc. 52, Burton Aff., ¶ 5; Doc. 58, Ex. 7, 2010 Vehicle Policy at 1-2; Doc. 43, Ex. 1, Deposition of Joshua R. Moser ("Moser Dep.") at 81:13-82:9.  Alternatively, technicians can first report to a Charter office in their personal vehicle or use some other mode of transportation, pick up a Charter vehicle at the office, and then drive that Charter vehicle to their first job site.  See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 4-5; Doc. 52, Burton Aff., ¶ 5; Doc. 43, Ex. 1, Moser Dep. at 81:13-82:9.  From time to time, technicians are placed "on call," meaning that they may be required to respond to emergencies between shifts.  Technicians who do not normally commute in a Charter vehicle may be required to drive the Charter vehicle home during the assigned on-call period.  See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 1.

The Charter vehicles driven by technicians are typically vans or small trucks, suitable for regular street travel.  (Doc. 52, Burton Aff. ¶ 6; see also Doc. 53, Affidavit of Robin Samuel ("Samuel Aff."), ¶ 5; Doc. 43, Ex. 4, Exterior photographs of Charter vehicles, at P000149-000151.)  They are not oversized vehicles and do not require that a driver hold a commercial vehicle license in order to operate them.  (Doc. 52, Burton Aff., ¶ 6.)

Compensation and Timekeeping Policies for BBTs Who Commute in Charter Vehicles

For technicians who choose to commute in a Charter vehicle, the company pays all vehicle-related expenses for both commute and noncommute periods, including insurance costs, licensing fees, gasoline, oil, and other vehicle maintenance costs, thereby saving the technicians commuting expenses.  Id., ¶ 8.

For technicians who elect to commute in Charter vehicles, the terms and conditions governing the use of Charter vehicles for commuting are set forth in Charter's Vehicle Policy and in various Timekeeping Memoranda periodically distributed to the technicians.  See generally Doc. 58, Ex. 7, 2010 Vehicle Policy; Ex. 5, 2011 Timekeeping Memo.  The Vehicle Policy sets forth requirements for the use of Charter vehicles, including safety requirements,

6

authorized and unauthorized uses of the vehicles, procedures for reporting accidents, and procedures for securing and maintaining the vehicles. See Doc. 58, Ex. 7, 2010 Vehicle Policy at 1-4. Generally, Charter vehicles are to be used for job-related duties and assignments and commuting. See Doc. 58, Ex. 7, 2010 Vehicle Policy at 2. Employees generally may not transport family members or other non-Charter personnel without prior supervisor approval. Id. However, technicians who commute in Charter vehicles are permitted to make occasional, personal stops during their commute, so long as they arrive at the first job site on time. See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 2.

The Timekeeping Memoranda specify, in detail, the time-recording procedures for both technicians who commute in Charter vehicles and those who do not, as well as the specific tasks required of technicians who commute in Charter vehicles in order to safeguard the vehicle and the equipment in it. See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 1-5. These memoranda reflect the general Charter policies that technicians are to be paid for all work done during their shifts, and that they are not to work during their commutes, or prior to or following their shifts, without authorization. Id. However, to the extent technicians perform work during such periods, other than activities incidental to commuting in Charter vehicles, they are to be compensated for such time. Id.; see also Doc. 58, Ex. 12, 2010 Timekeeping Policy at 1; Ex. 16, 2011 Handbook at 15. For example, the Timekeeping Memoranda provide that in the morning, before leaving their homes, all technicians who commute in Charter vehicles are required to secure in their company vehicle the following items: (i) a small hand-held signal level meter used to perform services at customer locations, (ii) a small hand-held company-issued communications device, often referred to as a "PDA" (personal digital assistant), (iii) a laptop computer, if one has been assigned to them by Charter,[5] (iv) paper work orders (on the rare occasion when work orders are not electronic), and (v) customer payments collected during prior shifts. See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 1-2; Doc. 52, Burton Aff., ¶ 10. These items are kept in technicians' residences overnight rather than in the Charter vehicle to safeguard them from theft. (Doc. 52, Burton Aff., ¶ 11.) The PDA is also kept in the technician's home overnight so that it may be charged and ready for operation the next day. Id. Technicians can carry all these items from their home to their vehicles (and back) in a single trip. (Doc. 52, Burton Aff., ¶ 12.) The

---

[5] Neither Donatti nor Cowan were issued laptops.

7

current version of the signal level meter is small and light weight, measuring approximately 10 inches by 5 inches. Id., ¶ 13; Doc. 43, Ex. 1, Moser Dep. at 94:11-16. Prior versions were similarly sized. (Doc. 52, Burton Aff., ¶ 13.) The PDA is typically a smart phone that a technician can put in his pocket. (Doc. 43, Ex. 1, Moser Dep. at 93:20-25; Doc. 52, Burton Aff., ¶ 13.) Any laptop that a technician may be issued is a standard-sized laptop computer that weighs no more than a few pounds. (Doc. 52, Burton Aff., ¶ 13.) The work orders and payments typically do not constitute more than a few pages of documents. Id. All of these small items can fit into a single over-the-shoulder bag, or some could be placed in a bag and others carried by hand or in the technician's pocket (such as the PDA). See id., ¶ 14; Doc. 43, Ex. 1, Moser Dep. at 93:13-94:21. Carrying these smaller items to or from one's vehicle does not lengthen the time it takes a technician to walk to his vehicle. (Doc. 52, Burton Aff., ¶ 16.) Under Charter policy, technicians are not compensated for carrying the items listed to and from their vehicle each day. See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 1-3. Charter's policies do not require technicians to load or unload into or out of their vehicles any heavy and bulky items, such as customer equipment (cable boxes or modems) and supplies (cable spools, heavy tools, or ladders), or to transport such items between their vehicles and their residences. See Doc. 58, Ex. 4, 2010 Timekeeping Memo at 4; Doc. 52, Burton Aff., ¶ 17. To the contrary, Charter policies require technicians to secure these heavy and bulky items in the company vehicle before clocking out for the day and driving home, so technicians are paid for securing and loading these items. Id.

Charter policy instructs technicians to walk around their vehicle once in the morning before driving to work to check for obvious safety hazards (such as a child playing near the vehicle, or a large piece of debris near the vehicle). See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 1-2; Doc. 52, Burton Aff., ¶ 18. They are also required to pick up the two orange traffic cones, if placed at the front and back of the vehicle for safety purposes at the time the vehicle was parked. (Doc. 52, Burton Aff., ¶ 19; Doc. 42, Ex. 1, Moser Dep. at 92:25-93:8.) Under Charter policy, technicians are not compensated for these tasks. See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 1-2.

In the morning, before their scheduled shift begins, technicians must briefly turn on their PDA to receive their first job assignment and to determine the assignment's location. See Doc.

8

58, Ex. 5, 2011 Timekeeping Memo at 2; Doc. 43, Ex. 1, Moser Dep. at 91:13-21. It takes less than a minute to log onto the PDA. (Doc. 43, Ex. 1, Moser Dep. at 92:15-17.) Some technicians log on to their PDA at home, prior to getting into their Charter vehicle; in that case, the technician will then log off the PDA after receiving his first assignment. Id. at 91:19-21. When the technician gets into his vehicle to drive to his first job assignment, he must then turn the PDA back on and enter his status as "en route." See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 2; Doc. 43, Ex. 1, Moser Dep. at 113:5-114:2, 121:15-20. Other technicians do not log onto their PDA in their homes, but instead check their first job assignment once in their vehicle immediately before their commute. (Doc. 43, Ex. 1, Moser Dep. at 122:12-25.) Technicians are not compensated for the brief time spent turning on their PDA's and receiving their first assignment, or for entering their "en route" status. See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 2; Doc. 43, Ex. 1, Moser Dep. at 91:22-24.

The Timekeeping Memoranda instruct technicians not to conduct any work or communicate about work with anyone during their commute to the first job assignment, unless there is an emergency, a service outage for which the technicians' assistance is needed, or a change in the first job assignment. See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 2. Technicians are also instructed not to conduct work or communicate about work during the commute home. See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 3. Although commuting time is generally not compensable under Charter policy, if a technician is called by a dispatcher or supervisor regarding one of these events, the technician is required to pull over to safely answer the call, and the technician's workday, and thus pay, will commence at that time. Id.

Each technician is assigned to a limited geographical territory (typically consisting of a cable system), and the job sites where the technician performs services, and thus the commuting area, are all located within the geographical boundaries of that territory. (Doc. 43, Ex. 1, Moser Dep. at 102:25-103:8.) Although a technician's commute within his assigned work area is generally not compensable, to the extent he must drive outside the assigned work area, Charter policies require that the technician be compensated for the extra travel time. See Doc. 57, Judson Aff., ¶ 20; Doc. 58, Ex. 29, 2009 Technician Timekeeping Memo Questions and Answers at 1, Questions 4 and 5. Charter's policy also provides that anyone who is required to commute more than 60 minutes on a regular basis should consult with Human Resources so that Charter

9

can determine whether the technician should be paid for any part of the commute.  See Doc. 58, Ex. 29, 2009 Technician Timekeeping Memo Questions and Answers at 7, Question 26.  If a technician who commutes in a Charter vehicle is required to return to the office after the end of his shift to turn in money, equipment, or work orders, the paid workday ends when those activities are completed, and not earlier, when the employee leaves the last customer location. See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 3; Ex. 16, 2011 Handbook at 70.

When a technician arrives home, he may be required to set two safety cones outside the vehicle (this requirement differs by Charter location, and not all technicians need to set out safety cones) and lock the vehicle.  See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 4; Doc. 43, Ex. 1, Moser Dep. at 100:11-24.  He must also take the signal level meter, PDA, any paper work orders, payments, or laptop he may have into his home; all other equipment remains in the vehicle.  See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 4; Ex. 16, 2011 Handbook at 70; Doc. 43, Ex. 1, Moser Dep. at 93:13-16.  Technicians are not compensated for these limited, incidental activities. See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 4.

Charter policies require that certain tasks be performed by technicians exclusively during the workday, when technicians are "on the clock."  For example, all technicians are instructed to do the following during their paid shifts: (i) stock their vehicle; (ii) fuel and clean their vehicle; and (iii) conduct routine maintenance.  If technicians are assigned a laptop, they are not to use it when they are not on the clock.  See Doc. 58, Ex. 5, 2011 Timekeeping Memo at 5; Doc. 43, Ex. 1, Moser Dep. at 105:14-106:21.  As a result, all of these activities performed during the workday are compensated under Charter policy.  Id.

Charter's Vehicle Policy is available to all employees via Charter's intranet, and Charter employees are notified of this fact when they begin their employment with Charter.  (Doc. 57, Judson Aff., ¶ 21.)  Although the Vehicle Policy is a free-standing policy, like the Timekeeping Memoranda, it is also incorporated into the Employee Handbook via a hyperlink.  Id.  The Vehicle Policy is periodically revised and reissued, and updated versions are published to employees online.  Id.  The Vehicle Policies applicable during the Class Period were issued on January 1, 2008, and September 1, 2010.  Id.  Employees are instructed to adhere to the policies or be subject to corrective action.  See Doc. 58, Ex. 7, 2010 Vehicle Policy at 1, 5.

10

Charter's Timekeeping Memoranda, like the Employee Handbooks and Timekeeping and Vehicle Policies, are issued periodically. (Doc. 57, Judson Aff., ¶ 6.) Technicians receive a copy of the then applicable Timekeeping Memorandum at the start of their employment. Id. Each time a Timekeeping Memorandum is revised and reissued, it is distributed to all technicians. Id. With nearly every distribution of a revised Timekeeping Memorandum, technicians are instructed to read the memorandum and sign a form acknowledging that they have received the memorandum and agree to comply with its policies and expectations. Id.; 2011 Timekeeping Memo at 6. The Timekeeping Memoranda in effect during the relevant Class Period were issued by Charter on September 12, 2008, November 2, 2009, September 24, 2010, and March 27, 2011. [6] See Doc. 58, Ex. 2, 2008 Timekeeping Memo at 1; Ex. 3, 2009 Timekeeping Memo at 1; Ex. 4, 2010 Timekeeping Memo at 1; Ex. 5, 2011 Timekeeping Memo at 1; Doc. 57, Judson Aff., ¶ 6. In addition to distributing the Timekeeping Memoranda to technicians, many supervisors hold meetings with the technicians to go over the terms of the memoranda and highlight any changes from the previously issued versions. (Doc. 57, Judson Aff., ¶ 7.) For example, Donatti's supervisor, Josh Moser, read the April 23, 2012 "Timekeeping Instructions for Field Technicians" out loud verbatim to his direct reports shortly after it was issued. See Doc. 43, Ex. 1, Moser Dep. at 117:7-118:11. After issuing Timekeeping Memoranda in 2008 and 2009, Charter also distributed "Question and Answer" documents to technicians' supervisors relating to the issued Timekeeping Memorandum. These documents provided additional information about the newly issued Timekeeping Memorandum. See Doc. 57, Judson Aff., ¶¶ 18, 20; Doc. 58, Ex. 30, 2008 Technician Timekeeping Memo Question and Answers at 1-5; Ex. 29, 2009 Technician Timekeeping Memo Questions and Answers at 1-7.

## Discussion

Plaintiffs claim the policies of Charter violate the Fair Labor Standards Act (FLSA), the Portal-to-Portal Act and its 1997 amendment, and the Employee Commuting Flexibility Act (ECFA). Defendants claim their policies do not violate the FLSA, the Portal-to-Portal Act or the ECFA.

---

[6] Subsequent to the filing of Charter's motion, the Timekeeping Memorandum was revised again and distributed as of April 23, 2012.

The purpose of the FLSA is to ensure that employees are paid for all hours worked in a given workweek, including overtime hours. 29 U.S.C. §§ 206, 207; see Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602 (1944). As enacted in 1938, the FLSA did not define the terms "work" or "workweek." Early Supreme Court decisions broadly construed those terms, holding, for example, that factory workers must be paid for time necessarily spent walking from time clocks near the entrance gate to their workstations. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 691-92 (1946). Concerned that these judicial interpretations of the FLSA were "creating wholly unexpected liabilities," Congress, in 1947, passed the Portal-to-Portal Act, amending certain provisions of the FLSA. IBP, Inc. v. Alvarez, 546 U.S. 21, 26 (2005).

Portal-to-Portal Act

The Portal-to-Portal Act, 29 U.S.C. § 254, narrowed the coverage of the FLSA by excepting two activities that had been treated as compensable under prior case law: (1) walking, riding or traveling to and from the actual place of performance of the principle activity of the employee; and (2) activities which are "preliminary to or postliminary to" that principal activity. 29 U.S.C. § 254(a). The statute does not define "principle activity." In Steiner v. Mitchell, 350 U.S. 247, 252-53 (1956), the Supreme Court held that activities which are integral and indispensable to an employee's principal activities are also compensable and not excluded by the Portal-to-Portal Act. See also Dunlop v. City Electric., Inc., 527 F.2d 394, 401 (5th Cir. 1976) (test for "principal activity" is whether the "work is necessary to the business and is performed by the employees, primarily for the benefit of the employer, in the ordinary course of business").

The Employee Commuting Flexibility Act (ECFA)

The stated purpose of the ECFA was "to amend the Portal-to-Portal Act of 1947 relating to the payment of wages to employees who use employer-provided vehicles" for commuting. See H.R. Rep. No. 104-585, p.2. The need to clarify the Portal-to-Portal Act arose from conflicting Department of Labor (DOL) opinion letters issued in 1994 and 1995. The 1994 opinion letter ruled that time spent by an employee traveling from home to the first work assignment, or returning home from the last assignment, was similar to that of traveling between the jobs during the day, and therefore, constituted a principal activity for which the employee must be compensated. No compensation would be required where employees used their personal

vehicles, however. In response to employer concerns, the DOL issued a revised opinion letter in April 1995 withdrawing the earlier opinion letter and modifying its position. Under the new opinion letter, commuting time in a company-provided vehicle need not be compensated under the following conditions: (1) commuting in the vehicle is strictly voluntary and not a condition of employment; (2) the vehicle is the type normally used for commuting; (3) employees incur no costs for driving the employer's vehicle; and (4) the work sites are within the normal commuting area of the employer.

Congress responded to the DOL's inconsistency by passing the EFCA in 1996. This Act added language to section 4 of the Portal-to-Portal Act in order to clarify the exclusions of the Act. The EFCA amendment to the Portal-to-Portal Act clarified the Act's exclusion as related to commuting by an employee in an employer-provided vehicle. The Act clarified that the Portal-to-Portal Act excluded compensation for an employee's commute in an employer-provided vehicle and for incidental activities related to the use of the vehicle for commuting. Specifically, the Act states that:

> the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of the vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a).

The effect of the ECFA was to carve out, from the realm of compensable time, two types of employee activities pertaining to commuting in a company vehicle: (1) travel, and (2) incidental activities. Although travel was already a part of the original Portal-to-Portal Act, the category of "incidental activities" is new. Previously, the Act only referred to activities "preliminary to or postliminary to" principal activities. 29 U.S.C. § 254(a)(2).

Here, the dispute is a question of statutory interpretation: Does the Portal-to-Portal Act, as amended by the EFCA, except the preliminary and postliminary activities and commute of broadband technicians for Charter, specifically plaintiffs Donatti and Cowan, thus making these activities noncompensable under the FLSA.

Burden of Proof

      Plaintiffs argue that the burden of proof lies with Charter in this case, relying on statements in case law such as <u>Baker v. Bernard Construction Co.</u>, 146 F.3d 1214, 1217 (10th Cir. 1998), which state the application of an exemption under the FLSA is a matter of affirmative defense on which the employer has the burden of proof. However, the Portal-to-Portal Act does not create an "exemption" as the term is used in <u>Baker</u> and the other cases cited by plaintiffs. None of the cases cited by plaintiffs speaks to the exclusion of only some activities from the FLSA; they all deal with the exempt status of a particular worker or workers from certain FLSA protections. <u>Id.</u> Better guidance is found in <u>Anderson</u>, 328 U.S. 680 (1946), where the Court said, "An employee who brings suit ... for unpaid minimum wages or unpaid overtime compensation ... has the burden of proving that he performed work for which he was not properly compensated." <u>Anderson</u>, 328 U.S. at 686-87. Typically, this question relates to whether the plaintiffs worked a certain amount of hours and whether those hours went uncompensated by the employer. However, there is an additional, earlier premise at issue in this case; namely, whether the alleged acts of the plaintiffs constitute compensable work at all. The burden to prove that such work was performed necessarily includes the burden to demonstrate that what was performed falls into the category of compensable work. <u>See Adams v. United States</u>, 471 F.3d 1321, 1326 (Fed. Cir. 2006) (plaintiffs "had the burden of showing that their drive time was compensable work for FLSA purposes and of showing that it does not fall into the set of activities excluded from the definition of compensable work by the Portal-to-Portal Act"); <u>Baker</u>, 146 F.3d at 1216 (in Portal-to-Portal Act case, jury instruction appropriately asks the jury whether plaintiffs have proved that their return travel is compensable). Thus, plaintiffs in this case have the burden of showing that their commute and preliminary and postliminary commuting activities are compensable work for FLSA purposes and showing that it does not fall into the set of activities excluded from the definition of compensable work by the Portal-to-Portal Act. <u>Adams,</u> 471 F.3d at 1326.

Application of the Portal-to-Portal Act and ECFA to Charter Policies

      Plaintiffs argue that the Portal-to-Portal Act, as applied to the policies of Charter, should be narrowly construed and interpreted in favor of employees. However, as set forth above, the Portal-to-Portal Act and its amendment, the ECFA, are not an exemption to the FLSA requiring

narrow construction.  See Adams, 471 F.3d at 1325-26.  This case is not about whether plaintiffs, as broadband technicians, are exempt from the FLSA overtime or minimum wage requirements; rather, the issue is, are the activities of the plaintiffs, pursuant to Charter's policies, compliant with the Portal-to-Portal Act and ECFA.  Specifically, are Charter's policies which exclude from the definition of compensable work, commuting time and pre- and post-commuting activities, in compliance with, or in violation of, the Portal-to-Portal Act, as amended by the ECFA?

The Portal-to-Portal Act generally excludes home-to-work travel from compensable time. 29 C.F.R. § 785.35.  Ordinary home-to-work travel is not compensable under the Portal-to-Portal Act in the absence of a contract or custom of compensation that exists between the employer and employees.  Chambers v. Sears Roebuck and Co., 428 Fed. Appx. 400, 410 (5th Cir. 2011). Without a contract or custom of compensation, the presumption is that commuting is noncompensable.  Rutti v. Lojack Corp., Inc., 596 F.3d 1046, 1057 (9th Cir. 2010).  An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home-to-work travel, which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites.  Normal travel from home to work is not work time.  29 C.F.R. § 785.35; Chambers, 428 Fed. Appx. at 410; Vega v. Gasper, 36 F.3d 417, 424 (5th Cir. 1994); Dunlop v. City Elec., Inc., 527 F.2d at 401.

Also excluded from the definition of compensable work is any other activity performed before or after an employee's shift that is not integral and indispensible to a principal activity. 29 U.S.C. § 254(a); Alvarez, 546 U.S. at 37.  This exclusion was further elaborated by the ECFA amendment to the Portal-to-Portal Act, which excludes from the definition of compensable work an employee's commuting time and incidental activities related to the commute when using an employer-provided vehicle.

Here, the undisputed evidence is that there is no contract or custom between Charter and its broadband technicians that establishes compensation for the technicians' commute times, in Charter-provided vehicles, from their home to their first job site, or from their last job site to their home.  Rather, the policies of Charter specifically state the contrary.  Charter's policies also preclude compensation for technicians' pre- and post-commuting activities when technicians are using Charter vehicles.  Plaintiffs argue these policies are not in compliance with the Portal-to-Portal Act/ECFA and, therefore, the FLSA requires Charter technicians to be compensated for

15

their commute times and pre- and post-commute activities. Plaintiffs argue the following reasons why their commute times and pre- and post-commute activities should be compensable and why Charter's policies, which preclude compensation, violate the Portal-to-Portal Act/ECFA: (1) technicians transport expensive equipment in the Charter vehicles during the commute for the benefit of Charter, thereby making the commute a principal activity; (2) commute in Charter vehicles is controlled by Charter in that restrictions are placed on technicians' activities during the commute, making the commute a principal activity; (3) use of the Charter vehicles for commuting is mandatory when technicians are "on call," thereby making the commute an integral and indispensable principle activity; (4) the activities performed by technicians pre- and post-commute are not incidental, but are principal activities; (5) the commuting area for technicians in the Sedalia, Missouri area includes traveling to job sites in the Warrensburg area, thereby making the commute a principal activity, and the ECFA exception for commuting within the normal commuting area and related incidental activities inapplicable; and (6) the activities performed by technicians pre- and post-commute are not incidental, but are principal activities performed before and after the commute, thus making the "continuous work day doctrine" applicable.

Charter's cross-motion for summary judgment argues that the Portal-to-Portal Act and ECFA, as applied to the undisputed policies of Charter, show no violation of the Act; Charter argues that plaintiffs' commute time and the activities required of technicians by Charter in conjunction therewith, do not violate the Portal-to-Portal Act, as amended by the ECFA.

In order to address the arguments of the parties and determine whether the policies of Charter are in violation of the Portal-to-Portal Act, the Court must specifically consider the ECFA amendment to the Portal-to-Portal Act which was specifically enacted to address when an employee uses an employer's vehicle for commuting. Plaintiffs' arguments in support of summary judgment which fail to consider the ECFA, misconstrue the application of the Portal-to-Portal Act. The Court must apply the Portal-to-Portal Act in its entirety, including the relevant ECFA amendment, to the facts of this case.

Transport of Equipment

Plaintiffs allege that transporting expensive equipment in their Charter vehicles during their commute from their home to their worksites, and from their worksites to home, is a part of

their principal activities as technicians, done for the benefit of Charter, and thus, is compensable work. In this context, however, courts have specifically held that the transport of tools and equipment in company vehicles is "incidental" to the use of an employer's vehicle for commuting. See Chambers, 428 Fed. Appx. at 417; Buzek v. Pepsi Bottling Group, Inc., 501 F.Supp.2d 876 (S.D. Tex. 2007). The House Report for the ECFA specifically states that "merely transporting tools or supplies should not change the noncompensable nature of the travel." H.R. Rep. No. 104-585, Use of Employer Vehicles, at 5 (1996). See also Chambers, 428 Fed. Appx. at 417; Buzek, 501 F.Supp.2d at 876. Further, here, the evidence is that technicians transporting parts and tools in Charter vehicles does not increase the technicians' commuting times. Moreover, the evidence shows that this transport of tools in Charter vehicles is directly related to technicians' commutes and thereby excluded under the ECFA; the commute in Charter-provided vehicles by Charter broadband technicians, by its very nature, includes the use of vehicles containing equipment and tools for use by Charter broadband technicians. The argument that transportation is compensable because it is for the benefit of Charter, and that a third-party carrier would be required to transport Charter's tools and equipment for technicians if the technicians did not transport such items in their Charter-provided vehicles is simply unsupportable. As is plaintiffs' argument that the high-dollar value of the tools and equipment stored in Charter vehicles used by technicians for commuting makes technicians' commutes compensable. In applying the law to the undisputed facts regarding transport of broadband equipment in Charter vehicles, there is no basis to support plaintiffs' allegations that Charter's policies violate the Portal-to-Portal Act/ECFA and that technicians should be compensated.

Restrictions on Use of Charter Vehicle for Commuting

Plaintiffs argue that the restrictions on technicians' commute activities make their commute time compensable as a principle activity. However, the case law on this issue is clear. "[C]ommuting done for the employer's benefit, under the employer's rules, is noncompensable if the labor beyond the mere act of driving the vehicle is de minimis." Adams, 471 F.3d at 1328; Easter v. United States, 83 Fed. Cl. 236, 250 (2008). Here, even accepting the commuting restrictions imposed on technicians as compulsory and for the benefit of their employer, Charter, the "burdens alleged are insufficient to pass the de minimis threshold." See Rutti, 596 F.3d at

17

1052-54.  Plaintiffs have failed to show that the restrictions on their use of Charter's vehicles for commuting amounted to "additional legally cognizable work."  Id. at 1053.

In Bobo v. United States, 136 F.3d 1465, 1468 (Fed. Cir. 1998), the court concluded though "the restrictions placed upon the INS Agents' commutes are compulsory, for the benefit of the INS, and closely related to the INS Agents' principal work activities ... the burdens alleged are insufficient to pass the de minimis threshold."  In Bobo, Border Patrol dog handlers were required to commute to and from work in their government cars while also:  transporting their dogs; monitoring their vehicle radios; on the lookout for suspicious activity; keeping track of their mileage; and refraining from personal errands or detours.  Id. at 1467.  In another relevant case, Chambers, 428 Fed. Appx. at 411-12, the court held that despite vehicle use restrictions by the employer which:  restricted use of company vehicle on days off for personal use; did not allow employees to pick up their children from school in the employer-provided vehicles; and restricted use of employer vehicle for personal errands unless they are short in duration, commute time was not compensable.  The court noted that nothing in the statutory scheme requires or even implies that conditions on an employee's use of a company vehicle can transform an otherwise noncompensable commute into a compensable one.  Id.

Here, Charter's policies state that technicians should refrain from personal use of Charter vehicles, including transporting a family member, friend, or even a Charter customer, without prior supervisor approval.  See Doc. 58, Ex. 7, Charter Vehicle Policy 2010.  The restrictions on vehicle use by Charter technicians are no more restrictive than those in Bobo and Chambers.  Accordingly, in applying the law, as set forth above, to the restrictions set forth in Charter policy for employees using Charter's vehicles, there is no basis to support a conclusion that the restrictions set forth in Charter's policies violate the Portal-to-Portal Act/ECFA.

Use of the Charter Vehicles for Commuting Mandatory when Technicians are "On Call"

Plaintiffs argue that because commuting in a Charter vehicle is mandatory when a technician is "on-call," the commute in the Charter vehicle by technicians is a principal activity for which the technicians must be compensated.  Charter argues that technicians enter into an "agreement" with Charter regarding their use of company vehicles, and that this policy complies with the Portal-to-Portal Act/ECFA.

18

The language of the ECFA and its legislative history compel the conclusion that the requisite agreement concerning the use of an employer's vehicle to commute may simply be a part or condition of the employee's employment. Rutti, 596 F.3d at 1046, 1052. See ECFA H.R. 1227 (this bill "does not require a written agreement, this requirement may be satisfied through a formal written agreement between the employee and employer, ... or an understanding based on established industry or company practices."). H.R. Rep. No. 104-585 at 4 (1996). Indeed, the most logical place to record an agreement between an employee and employer concerning the use of an employer's vehicle is in the employee's employment contract. Id. This analysis was upheld in Adams, 471 F.3d at 1323, in which the court held that commute in government vehicle was noncompensable, though a condition of employment.

Here, Charter has policies in place concerning the use of Charter vehicles by its broadband technicians. The evidence shows that all employees are made aware of these policies when they begin their employment with Charter. Charter's Vehicle Policy is free-standing policy available to employees via several means, including Charter's intranet, and via a hyperlink in the online Employee Handbook. When updates are made to the policy, employees are made aware of these policies (details set forth in Facts section of this order), and frequently must sign a form acknowledging receipt of the policies. This evidence supports that Charter's employee vehicle policies are an agreement between Charter and its employees; they are a condition of employment with Charter. As a condition of employment, the use of Charter vehicles by it broadband technicians, need not necessarily be voluntary. Legislative history and case law support that the agreement on use of employer's vehicle can be a required condition of employment and need not necessarily be "voluntary." See Rutti, 596 F.3d at 1052 (citing H.R. Rep. No. 104-585 at 8).

Thus here, where the evidence shows that Charter has very specific policies on use of Charter vehicles for commuting and such policies are made known to the technicians and are conditions of the technicians' employment, the compelled use of Charter vehicles for commuting when a technician is "on call" does not make the technician's commute time compensable.

Activities Performed by Technicians Pre- and Post-Commute as Incidental

As set forth in the facts, Charter's policies require technicians to perform certain actions pre- and post-commute. Plaintiffs argue these activities are not incidental to their commute, but

are principal activities and, therefore, are compensable. Charter argues that the activities are incidental to the broadband technicians' commute in Charter-provided vehicles and, therefore, do not require compensation, consistent with the Portal-to-Portal Act/ECFA.

Upon review, the evidence supports that these activities are incidental. First, technicians carrying their PDA, signal level meter, work orders and payments and/or laptops to and from their vehicles is related to their commute to and from their homes in Charter-provided vehicles. The very nature of commuting in a company vehicle provides some pre- and post-commute activities by employees. So long as these activities are de minimis/incidental, the Portal-to-Portal Act/ECFA excludes these activities from those considered principal; therefore, not requiring compensation from the employer to the employee for these activities. In Chambers, 428 Fed. Appx. at 417-19, the court specifically held that carrying communications device from home to vehicle and back and loading into vehicle replenishment parts that are sent to employees' homes, were activities incidental to the commute and not compensable. The activities here are no more burdensome. See Singh v. City of New York, 418 F.Supp.2d 390 ((S.D.N.Y. 2005) (additional commuting time associated with carrying briefcase containing files was de minimis and not compensable under FLSA).

Moreover, a technician carrying these items to and from his Charter vehicles does not lengthen the time otherwise required for a technician to walk to and from the vehicle. The evidence is that these items can be easily carried in a shoulder bag or in a technician's hands or some other regular fashion, and that no additional trips from technicians' homes to their vehicles and back are necessary. Certainly, such activity is de minimis and is not a principal activity supporting compensation.

Second, the time technicians spend at the beginning of their day quickly inspecting around their Charter vehicle for obvious hazards only takes a few seconds and is also directly related to the use of Charter vehicles for commuting. This is also true with regard to the activity of removing cones from around the Charter vehicles at the beginning of their day, and placing the cones out when arriving home at the end of the day. These activities are de minimis, taking only seconds, and are directly related to use by technicians of Charter vehicles for commuting.

The legislative history of the ECFA indicates that much more time-intensive inspections, such as "routine vehicle safety inspections ... have long been considered preliminary or

postliminary activities and therefore are not compensable." Buzek, 501 F.Supp.2d at 882 (citing H.R. Rep. No. 104-585 at 5). Courts, too, have determined that vehicle inspections far more lengthy than the quick "walk around" required by Charter technicians are incidental to commuting and not compensable under the ECFA. See Chambers, 428 Fed. Appx. at 420 n.55 (performing vehicle safety inspection was "clearly incidental to the commute under the ECFA and thus noncompensable"); Espinoza v. County of Fresno, No. 07-1145, 2011 WL 3359632 at *7 (E.D. Cal. Aug. 3, 2011) (routine visual inspections of fluid levels and tire pressure levels needed to ensure that the vehicle is in safe operating condition were incidental to the use of the vehicle under the ECFA).

Third, the evidence shows that the time spent by technicians turning on their PDA's to obtain their first assignment of the day, and to enter their status "en route" to their first job site, is also incidental to their commute in a Charter-provided vehicle. While the technician must check his first assignment early enough to ensure he or she has allotted sufficient commute time for the morning to his first job site, this by its very nature is incidental to use by the technician of an employer-provided vehicle for commuting from the technician's home to his first job site at the beginning of his day. See Chambers, 428 Fed. Appx. at 416 (communication between the employee and employer to receive assignments or instructions is required in order for programs which allow use of employer vehicle for commuting to exist; ECFA intended these activities to be noncompensable). Moreover, the time required for a technician to turn on his PDA and check his first job assignment and log "en route," or even to check his first job assignment, and then later log "en route" when he enters his vehicle, is de minimis. The evidence is that it takes less than a minute to log in and check the first job assignment and/or log "en route."

The case law supports that these activities are not principal activities, but are de minimis and incidental to the Charter technicians' commute. For instance, in Chambers, 428 Fed. Appx. at 417, the court held that time spent plugging communications devices in overnight and logging in to receive the first assignment in the morning relates to commute rather than to principal activities, and is thus not compensable. In another case, Buzek, 501 F.Supp.2d at 876, 886-87, the court held that time spent by the employee plugging in communications device to upload and download information about service calls was incidental to the use of the company vehicle for commuting and not compensable.

Here, even considering the cumulative daily time required for completing the pre- and post-commuting activities set forth in Charter policies, such time is de minimis and incidental. Although there is no evidence showing exactly how long it takes technicians to complete the preliminary and postliminary activities each day, no reasonable jury could infer from the evidence that these activities require more than a de minimis amount of time. There is no evidence showing that these activities would even total ten minutes in any given day. See Rutti, 596 F.3d at 1056-57 (noting that most courts have found preliminary work of 10 minutes or less a day to be de minimis and not compensable). Moreover, the evidence supports that these activities are incidental to Charter technicians using Charter-provided vehicles to commute from their homes to their first job sites and back to their homes at the end of their work day. The evidence does not support plaintiffs' allegations that Charter's policies related to pre and post-commute activities of broadband technicians violate the Portal-to-Portal Act/ECFA.

Other Alleged Pre- and Post-Shift Activities

Plaintiffs also assert that Charter failed to compensate them for "gathering tools" and doing "paperwork" before and after their shift. However, plaintiffs have no evidence that they are required to perform these activities before or after their shifts and, in fact, Charter's policies tell technicians to conduct these activities only while on the clock. Further, Charter policy states that if such activity would be required, that such activity is compensable.

The only tools technicians need to gather, as discussed in the previous section, are a signal level meter, a PDA and a laptop (if applicable), and activities related to these tools are incidental to the commute by Charter technicians in a Charter-provided vehicle. All other equipment is kept in the Charter vehicle overnight and is to be secured in the vehicle while technicians are still on the clock, as set forth in policy. Charter's policies similarly instruct technicians to stock their vehicle with necessary equipment during their shift. Any time spent by a technician obtaining or replenishing equipment needed to perform service calls is compensable under the clear language of Charter's Timekeeping Memoranda, to be performed during the shift and not before or after.

As to paperwork, Charter's Timekeeping Memoranda plainly does not require technicians who commute in Charter vehicles to perform any paperwork prior to or after their commutes; to the contrary, the policy prohibits technicians from doing so.

Plaintiffs also allege that Charter's Cash Management Policy requires them to turn in any funds collected on a daily basis to the Charter facility. Plaintiffs allege that policy requires them to turn in any collected funds no later than the next morning, thus requiring technicians to make a stop by the office to deposit monies either after their scheduled shift ended or prior to the beginning of their shift the next day. However, plaintiffs fail to identify the specific Charter policy requiring such activity, and the evidence does not support that no later than the next morning means turning the funds in off the clock. According to the deposition testimony of Charter's technical operations supervisor, a technician who collects cash or money should turn it in the day it is received; however, it can be held overnight by the technician and turned in the "very next morning," with an exception for weekends when it may be held overnight longer. See Doc. 43, Ex. 1, Moser Dep. at 68-69. Plaintiffs' allegations that the "very next morning" requires a deposit off the clock prior to the beginning of their shift is not supported by the evidence. Rather, the undisputed evidence is that contrary to the plaintiffs' assertions, Charter's policies specifically require that technicians are to turn in customer payments while on the clock.

With regard to all these allegations, to the extent a technician would need to work prior to or after their shift, Charter's policies make it clear that technicians will be paid for all time worked, regardless of when it occurs. In particular, they state that: (1) if employees begin their workday before the start of their scheduled shift, they will be paid from the time they begin their workday before the start of their scheduled shift; (2) if a technician is required to work past the end of their shift to return to the office or complete other tasks, they will be paid up until the time they complete all work, even if it is after the end of the shift; and (3) as a general rule, technicians will be paid for all time worked.

Normal Commuting Area

Plaintiffs allege the commuting area for Charter broadband technicians in the Sedalia, Missouri area includes traveling to job sites in the Warrensburg area, thereby making the commute a principal activity, and the ECFA exception for commuting within the normal commuting area and related incidental activities inapplicable. Specifically, plaintiffs allege that because the commuting area for the Sedalia, Missouri broadband technicians includes commuting to the Warrensburg area, such commute is longer than the normal commuting area

for Charter broadband technicians and, therefore, is not incidental as defined by the Portal-to-Portal Act/ECFA, and should be compensable as a principal activity.

Charter argues that the nature of their business makes the Sedalia technicians commute time to Sedalia and Warrensburg normal. Charter's policies do not define normal commute time in geographical terms because the territory assigned to each technician differs by office, and by the location of the technician's residence. See Doc. 43, Ex. 1, Moser Dep. at 115:22-24. However, Charter's policies do specifically state that if a technician's commute time is in excess of an hour, the technician is to notify his supervisor to determine whether the technician should be compensated for such time. Here, the evidence does not support that technicians are commuting in excess of one hour; rather, the evidence is that the typical commute time for technicians is 15 minutes to their first job. Id. at 115:13-18. A broad allegation of uncompensated commutes in excess of one hour which is unsupported by evidence is not sufficient to overcome a motion for summary judgment.

Moreover, plaintiffs' allegations that travel by Sedalia technicians to the Warrensburg area is outside the normal commuting area for Charter technicians assigned to that area is not supported by the evidence. Rather, the evidence supports the contrary. There is no evidence to support plaintiffs' assertion that Charter's store front location in Warrensburg dictates that Charter should have broadband technicians who are assigned only to the Warrensburg geographical area. Charter's policies do not define what is a normal geographical location or what is the normal commute; the policies provide that if a technician commutes outside his assigned limited geographical area he is compensated, and if his commute is in excess of an hour, he should notify his supervisor in order for a determination to be made as to whether such commute should be compensable. Here, clearly, the evidence is that the normal geographical location for Charter broadband technicians in the Sedalia area includes the Warrensburg area. The evidence does not support that Charter technicians in the Sedalia office are being required to commute outside the normal commuting area for that region of Charter's business; the normal commuting area is Sedalia and Warrensburg.

To the extent plaintiffs allege the commute by Sedalia technicians to Warrensburg precludes application of the ECFA because these technicians are using Charter's vehicle for travel outside the normal commuting area for Charter's business or establishment, the evidence

simply does not support this.  Thus, for the reasons set forth herein, Charter's policies in this regard do not violate the Portal-to-Portal Act/ECFA.

Continuous Workday Rule

Plaintiffs argue that because the activities they perform pre- and post-commute are principal activities and are directed by Charter policy, this extends their workday to include their pre-commute and post-commute activities, as well as their commute time to and from their homes that occurs in between.  See Alvarez, 546 U.S. 21 (2005); Lemmon v. City of San Leandro, 538 F.Supp.2d 1200, 1208 (N.D. Cal. (2007).  This issue, however, is resolved with this Court's determination that the pre- and post-commute activities required by Charter policies are incidental activities to Charter technicians' commute in Charter vehicles, and therefore, are not compensable as principal work activities.  Id.

## Conclusion

The motions for partial summary judgment specifically state the issue is whether Charter policies comply with the Portal-to-Portal Act/ECFA.  However, plaintiffs' motion also argues unique facts and circumstances of their employment which they allege violate the Portal-to-Portal Act.  The Court finds that such allegations fail to support that Charter's policies are not in compliance with the Portal-to-Portal Act or the ECFA.

For the reasons set forth in this order, this Court finds there is no dispute of material fact; Charter's policies are consistent with the plain language of the Portal-to-Portal Act/ECFA, its legislative history, and established federal precedent.  No reasonable jury could conclude that Charter's compensation and timekeeping policies applicable to its Broadband Technicians who commute in Charter vehicles violate the Portal-to-Portal Act or the ECFA.  Charter is entitled to judgment as a matter of law.

IT IS, THEREFORE, ORDERED that the motion for partial summary judgment filed by defendants Charter Communications, L.L.C., and Charter Communications, Inc., is granted.  [49] It is further

ORDERED that the motion for partial summary judgment filed by plaintiffs Peter Donatti and Matthew Cowan is denied.  [39]

Case 2:11-cv-04166-MJW   Document 89   Filed 03/29/13   Page 25 of 26

Dated this 29th day of March, 2013, at Jefferson City, Missouri.

/s/  *Matt J. Whitworth*

MATT J. WHITWORTH
United States Magistrate Judge
